IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EQUIL IP HOLDINGS LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>AKAMAI TECHNOLOGIES, INC.,<br><br>       Defendant. | Civil Action No. 22-677-RGA |

MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, Andrew L. Brown, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Jason R. Bartlett (argued), Jason A. Crotty, Marc J. Pernick, MAURIEL KAPOUYTIAN WOODS LLP, San Francisco, CA; Steven Callahan, Christopher T. Bovenkamp, CHARHON CALLAHAN ROBSON & GARZA, PLLC, Dallas, TX,

    Attorneys for Plaintiff.

Adam W. Poff, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; James R. Batchelder, James L. Davis, Jr. (argued), Daniel W. Richards, ROPES & GRAY LLP, East Palo Alto, CA; Colin P. Dunn, ROPES & GRAY LLP, New York, NY,

    Attorneys for Defendant.

March 6, 2024



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Plaintiff Equil IP's motion to strike Defendant Akamai's inequitable conduct defense. (D.I. 39). I have reviewed the parties' briefing. (D.I. 40, 44, 46). I heard oral argument on July 17, 2023. (D.I. 58).

For the reasons set forth below, I will **GRANT-IN-PART** Plaintiff's motion.

## I. BACKGROUND

The present dispute stems from a fractured partnership between two companies. In 1989, Sean Barger founded Equilibrium Technologies. (*See* D.I. 34 ¶ 119; *see also* D.I. 13 ¶ 11). Equilibrium Technologies filed U.S. Patent Application No. 09/425,326 in 1999, and the application issued as U.S. Patent No. 6,792,575 ("the '575 patent") in 2004. (D.I. 34 ¶ 119; *see also* D.I. 13 ¶ 13–14). The patent lists Christopher Samaniego, but not Barger, as an inventor. (D.I. 13-1 at 2 of 460).

Barger left Equilibrium Technologies in 2001. (D.I. 34 ¶ 119). In 2003, Samaniego left Equilibrium Technologies to join Scene7; the two companies entered into a partnership. (*Id.*). Barger re-acquired Equilibrium Technologies in 2004 and sued Samaniego, Scene7, and others, alleging misconduct related to the transfer of assets to Scene7. (*Id.*).[1]

In 2005, while the litigation was ongoing, Equilibrium and Barger filed U.S. Patent Application No. 11/269,916 ("the '916 application") as a continuation-in-part of the '575 patent, again listing Samaniego, but not Barger, as an inventor. (*Id.*). The PTO issued a notice to file missing parts because the '575 patent's named inventors had not signed the '916 application. (*Id.*; D.I. 34-4 at 77–78 of 168). Barger then filed a petition to amend the '916 application and a

---

[1] Plaintiff is the successor-in-interest to Automated Media Processing Solutions, Inc. d/b/a Equilibrium. (D.I. 13 ¶ 5). Defendant contends that Barger re-acquired Equilibrium Technologies through Equilibrium. (D.I. 34 ¶ 119).

2

statement to add himself as an inventor. He attested that he could not reach any of the originally named inventors, including Samaniego. (D.I. 34 ¶ 119).

The PTO dismissed Barger's petition and statement for failure to show diligence in locating the inventors. The PTO stated, "One returned mailing does not rise to the level of diligence required to obtain Rule 47 status." (*Id.* ¶ 120; D.I. 34-4 at 113–14 of 168). Barger and Equilibrium requested reconsideration after failing to locate Samaniego through an internet search. (D.I. 34 ¶ 120; D.I. 34-4 at 117–18 of 168). The PTO allowed prosecution to continue and eventually issued the '242 and '745 patents, both of which claim priority to the '916 application. (D.I. 34 ¶ 120–21).

At the time of the briefing and argument, Plaintiff[2] alleged that Defendant infringed U.S. Patent Nos. 8,495,242 ("the '242 patent") and 9,158,745 ("the '745 patent). (D.I. 13 ¶ 1).[3] In response, Defendant asserts affirmative defenses of inequitable conduct and other "equitable doctrines." (D.I. 34 ¶¶ 115–26). Defendant contends that during the prosecution of the '916 application, Barger intentionally misrepresented to the PTO that he could not reach Samaniego, despite litigating a separate dispute with him during that time. (*Id.* ¶¶ 119–22). Defendant's "equitable doctrines" defense includes allegations of "waiver, estoppel, acquiescence, laches, prosecution laches, [and] unclean hands." (*Id.* ¶ 123). Plaintiff moves to strike these affirmative defenses. (D.I. 39).

A few months after the argument, the '242 patent was dismissed with prejudice. (D.I. 63). Thus, the only patent still in the case is the '745 patent.

---

[2] Plaintiff owns Equilibrium's patents by assignment. (D.I. 13 ¶ 4).

[3] Plaintiff also asserted the '575 patent against Defendant. (*See* D.I. 13 ¶ 1). That patent has since been dismissed with prejudice. (D.I. 63).

3

## II. LEGAL STANDARD

### A. Inequitable Conduct

To establish inequitable conduct, an accused infringer must generally show (1) "that the patentee acted with the specific intent to deceive the PTO" and (2) materiality. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). Allegations of inequitable conduct must be pled with particularity. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009); *see also Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *5 (D. Del. Feb. 3, 2012) ("Although inequitable conduct is conceptually broader than fraud, any such allegations must be pled in accordance with Rule 9(b), which requires that 'the circumstances constituting fraud or mistake shall be stated with particularity.'" (citation omitted)). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp.*, 575 F.3d at 1328.

While "but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, [the Federal Circuit has] recognize[d] an exception in cases of affirmative egregious misconduct." *Therasense*, 649 F.3d at 1292. In those cases, "such as the filing of an unmistakably false affidavit, the misconduct is material." *Id.*

### B. Motion to Strike

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Wyeth*, 2012 WL 600715, at *4. "When ruling on a motion to strike, 'the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.'"

*Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quoting *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988)). "However, a court is not required to accept affirmative defenses that are mere 'bare bones conclusory allegations,' and may strike such inadequately pleaded defenses." *Id.* at 408 (quoting *Cintron Beverage Grp., LLC v. DePersia*, 2008 WL 1776430, at *2 (E.D. Pa. Apr. 15, 2008)). "A motion to strike a defense should not be granted 'unless the insufficiency of the defense is clearly apparent.'" *Id.* at 402 (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986), *rev'd on other grounds*, 505 U.S. 504 (1992)).

## III. DISCUSSION

### A. Inequitable Conduct

Plaintiff contends Defendant does not meet the pleading standard under Rule 9(b) because Defendant has no basis to allege that any person had the specific intent to mislead the PTO, nor that the '745 patent would not have issued but for the purported false statements. (D.I. 40 at 5; *see also* D.I. 58 at 4:19–22).

Defendant argues that Plaintiff is improperly seeking a decision on the merits of the inequitable conduct defense. (D.I. 44 at 8). Defendant contends it pled sufficient facts to infer both intent and materiality. (*Id.*). Defendant further argues that materiality is presumed because its answer alleges "egregious misconduct." (*Id.*).

#### 1. Material Omission

Plaintiff argues Defendant has failed to plead that the patent would not have issued but for the purportedly false statements. (D.I. 40 at 7). Plaintiff contends that the original inventors' cooperation was not required. (*Id.* at 7–8). Plaintiff thus argues that Equilibrium could have continued to prosecute the '916 application even if Samaniego refused to join. (*Id.*).

Defendant argues it has pled materiality for three reasons. (D.I. 44 at 12). First, Defendant contends that the submission of a false affidavit is material. (*Id.* at 12–13). Defendant argues, "Equilibrium would not have been able to prosecute the '916 application . . . without misrepresenting and omitting pertinent facts surrounding efforts to reach Mr. Samaniego." (*Id.* at 13). Second, Defendant contends that misrepresentations about inventorship are material. (*Id.* at 14). Defendant argues that Equilibrium's statements about Samaniego "permitted Equilibrium to take control of the patent family . . . and file subsequent applications removing all six of the originally named inventors in the applications." (*Id.*). Third, Defendant contends there is materiality because "differences in inventorship rendered the priority claims invalid." (*Id.* at 15). Defendant argues that the '745 patent is invalid because it does not share any common inventors with U.S. Patent Publication No. 2002/0078093, even though the prior publication and the patent share the same specification. (*Id.*).

Defendant's inequitable conduct pleading does not include any allegations about replacing all originally named inventors or about differences in inventorship rendering patent claims invalid. I therefore do not consider these arguments, which were raised for the first time in Defendant's opposition brief. *See Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 485, 487 (D. Del. 2022) ("As the Third Circuit has stated, '[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *M2M Sols. LLC v. Telit Commc'ns PLC*, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015)) (declining to read new theories or facts from a party's brief into the party's answer). The only actual false statement or omission alleged is that Barger knew how to get in touch with Samaniego—by contacting Samaniego's lawyer—but did not disclose that to the PTO. (*See* D.I. 58 at 20:20–24

6

("What we have alleged is false is that Mr. Barger had his attorney submit this declaration—this petition asserting that diligent efforts have been used to reach the inventors.")).[4]

Defendant's answer does not sufficiently plead how the alleged omission affected the materiality of the patent at issue. At the time of prosecution of the '916 application, assignees or other inventors were permitted to continue prosecution on behalf of an unreachable or uncooperative joint inventor. *See* 37 C.F.R. § 1.47. Equilibrium, as assignee, thus could prosecute the application on behalf of Samaniego. (*See* D.I. 34-4 at 99 of 168; D.I. 40 at 7). Defendant's answer does not suggest how Samaniego could have prevented the continued prosecution of the '916 application. Construing all facts in favor of Defendant, I conclude that the pleading fails to suggest that Barger's statements were material to the prosecution of the '916 application.

### 2. Intent to Deceive

Plaintiff contends Defendant's answer does not suggest that anyone at Equilibrium had the intent to deceive the PTO. (D.I. 40 at 5). Plaintiff argues that Defendant "does not allege that any of the statements about the steps that the prosecuting attorney took to reach the inventors were false." (*Id.*). Plaintiff further contends that Defendant "cannot credibly allege any *motive* for the prosecuting attorney to have filed a false Response to Notice." (*Id.*).[5] Under pre-America Invents Act regulations, Plaintiff contends that Equilibrium could have obtained a

---

[4] I also limit my consideration to allegations about Barger, as Defendant's pleading does not mention other individuals by name. *See, e.g., Alza Corp. v. Par Pharm., Inc.*, 2014 WL 12908353, at *1 (D. Del. May 27, 2014) ("The Defendants need to identify by name the individuals who did things constituting affirmative misconduct or contrary to the duty of candor, and material to the issuance of the patents, on particular dates, with the intent to deceive the PTO.").

[5] Defendant responds that regardless of what the prosecuting attorney knew, Barger knew about the purportedly omitted information and had a duty of candor to the PTO. (D.I. 44 at 11).

7

patent without the original inventors' cooperation. (*Id.* at 6–7).[6] Plaintiff thus argues, "Equilibrium could gain nothing from lying about its inability to contact the inventors." (*Id.* at 7).

Plaintiff also argues Defendant "would have to plead clear and convincing facts where the sole reasonable inference is an intent to deceive" to sustain an inequitable conduct defense. (*Id.* at 6). Plaintiff contends that Defendant cannot do so because multiple reasonable inferences can be drawn here—including that the original inventors ignored the communications because they did not want to hurt their position in the Barger litigation. (*Id.*).

Defendant argues that Plaintiff is relying on the incorrect standard for the intent prong. (D.I. 44 at 9). Because this is the pleading stage, Defendant contends that it "need only plead facts from which it is reasonable to infer the applicant intended to deceive the PTO." (*Id.*). Defendant contends that contrary to Plaintiff's argument, clear and convincing evidence is the standard for proving, not pleading, inequitable conduct. (*Id.*).

Defendant argues it has pled sufficient facts to permit a reasonable inference of intent to deceive the PTO. (*Id.* at 10). Defendant argues that Barger and Equilibrium "played an inventorship shell game via false assertions of which individuals made inventive contributions to which patents," as Barger filed continuations of the '575 patent that replaced the six originally named inventors with himself and six others. (*Id.* at 1, 10). Defendant also argues that Barger falsely stated he was unable to reach Samaniego despite diligent efforts. (*Id.* at 10). Defendant contends that diligence only matters if an inventor's whereabouts are unknown, but the litigation between Barger and Samaniego showed that Barger could contact Samaniego. (*Id.* at 10–11).

---

[6] Plaintiff contends that post-AIA regulations, which do not apply, produce the same result. (D.I. 40 at 7 n.2).

Defendant thus argues that Barger's efforts—using FedEx and performing an internet search—"were intentionally in vain." (*Id.*).

Defendant's opposition brief significantly expands on the inequitable conduct allegations in its answer. Whereas Defendant's answer focuses on Equilibrium's failure to disclosure Barger's purported ability to contact Samaniego, the briefing raises additional theories for the first time. I will not consider Defendant's "inventorship shell game" allegations from the briefing. *See Allergan*, 636 F. Supp. 3d at 487 (citations omitted).

I agree with Defendant that the clear and convincing evidence standard is inapplicable at this stage. Defendant's allegations nevertheless do not meet the heightened particularity requirements of Rule 9(b). While Defendant alleges the involvement of a particular person—Barger—and describes the dates of prosecution and litigation, it fails to plead any facts suggesting that Barger intended to deceive the PTO. Because the purported failure to tell the PTO that Barger knew how to reach Samaniego was not material to the issuance of the patent, arguments about Barger's duty of candor do not support Defendant's position. *See* 37 C.F.R. § 1.56; *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 973 (Fed. Cir. 2010) ("The duty of candor includes a duty to disclose to the PTO all information known to each individual that is material to the issue of patentability."). Defendant pleads no other facts that could lead one to infer that Barger intended to deceive the PTO by adding himself as an inventor.

I will therefore grant Plaintiff's motion to strike Defendant's inequitable conduct defense.

### B. Other Equitable Defenses

Plaintiff argues that Defendant's "equitable doctrines" defense "essentially repeats the inequitable conduct defense." (D.I. 40 at 1). To the extent the two are different, Plaintiff argues the "equitable doctrines" defense fails to state a factual basis. (D.I. 46 at 8).

Defendant contends that Plaintiff's "conclusory assertion[s]" about the other equitable defenses are meritless. (D.I. 44 at 16). Defendant argues that its unclean hands defense is not subject to the heightened pleading standard of Rule 9(b). (*Id.*). Regardless, Defendant argues that it meets either pleading standard and that Plaintiff has not identified any unmet elements of the unclean hands defense. (*Id.* at 16–17). Defendant contends that it has sufficiently pled its remaining equitable defenses. (*Id.* at 17–18).

The Rule 9(b) standard governs Defendant's unclean hands pleading. "Unclean hands is an equitable defense requiring the showing of five elements: '(1) the party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to matter in issue (4) that injures other party (5) and affects balance of equities between litigants.'" *Sonos, Inc., v. D&M Holdings Inc.*, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016) (quoting *Sun Microsystems*, 630 F. Supp. 2d at 410). The conduct alleged "must have an immediate and necessary relationship to the equity which [the plaintiff] seeks to obtain in the matter in litigation." *Sun Microsystems*, 630 F. Supp. 2d at 410 (quoting *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 357 (D. Del. 1977)). "The pleadings standard for unclean hands depends on the specific conduct alleged. A[n] . . . affirmative defense that alleges fraudulent conduct must be pled with particularity under Rule 9(b)." *Allergan*, 636 F. Supp. 3d at 488.

I think the facts alleged in Defendant's answer do not meet the Rule 9(b) standard. To the extent that Defendant's unclean hands defense reincorporates its inequitable conduct allegations (D.I. 34 ¶ 124), those allegations do not meet the pleading standard. The other allegations in Defendant's answer—that Plaintiff identified the '745 patent as a continuation-in-part and/or a divisional with the intent to overcome certain prior art (*id.* ¶ 125)—are

unsubstantiated by facts. Defendant does not allege with particularity the "specific who, what, when, where, [or] how" for its unclean hands defense. *Exergen Corp.*, 575 F.3d at 1328.

I therefore cannot conclude that Defendant has met the heightened Rule 9(b) standard for pleading unclean hands. I will strike Defendant's unclean hands defense, but I will permit Defendant to pursue the other equitable doctrines alleged in its answer.

### C. Leave to Amend

Plaintiff argues that an amendment of Defendant's inequitable conduct allegations would be futile. (D.I. 40 at 8). Plaintiff contends that it gathered declarations from all of the originally named inventors, who either agree or do not dispute that Barger should be added as a joint inventor for the priority applications. (*Id.*). Plaintiff contends it has already applied to the PTO to correct inventorship. (*Id.*). Because of the declarations, Plaintiff argues "there can be no reason to infer the requisite intent or materiality." (*Id.*).

Defendant argues that amendment is neither necessary nor futile. (D.I. 44 at 18). Defendant contends that the recently obtained declarations are not relevant because they are unrelated to Barger's intent at the time of prosecution of the '916 application. (*Id.*). Defendant also contends that "additional defenses have arisen based on [Plaintiff's] recent inventorship filings." (*Id.*). Defendant further argues that laches is presumed here because Plaintiff waited eighteen years to correct inventorship. (*Id.* at 18–19). Defendant thus seeks leave to amend its answer to add new defenses. (*Id.* at 19).[7]

---

[7] Plaintiff argues that Defendant should not be granted leave to plead its "inventorship shell game" theory. (D.I. 46 at 7). Plaintiff contends these allegations, if pled, could not support an inequitable conduct defense. (*Id.*).

I disagree with Plaintiff that an amendment of Defendant's answer would necessarily be futile. I will allow Defendant to file a motion for leave to amend its answer to Plaintiff's amended complaint provided it does so promptly.

## IV.  CONCLUSION

For the reasons discussed above, I will **GRANT** Plaintiff's motion to strike (D.I. 39) with respect to Defendant's inequitable conduct and unclean hands defenses. I will **DENY** Plaintiff's motion with respect to Defendant's remaining "equitable doctrines" defenses.

An appropriate order will issue.